IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00930-KLM

DEBORAH A. QUINTANA, formerly known as Deborah A. Molina,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court[1] on the **Social Security Administrative Record**

[#12],[2] filed on July 17, 2014, in support of Plaintiff's Complaint [#1] seeking review of the

decision of Defendant Carolyn Colvin, Acting Commissioner of the Social Security

Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for disability

insurance benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3)

(the "Act"). *See Compl.* [#1].  On August 8, 2014, Plaintiff filed an Opening Brief [#15] (the

"Brief").  On November 13, 2014, Defendant filed a Response [#18].  On November 18,

2014, Plaintiff filed a Reply [#19].  The Court has jurisdiction to review the Commissioner's

final decision under 42 U.S.C. § 405(g).  The Court has reviewed the entire case file and

_____

     [1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See Consent Form* [#22]; *Order of Reference* [#23].

     [2] "[#12]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner and **REMANDS** the case for further proceedings consistent with this Order.

## I. Factual and Procedural Background

Plaintiff alleges that she became disabled on May 19, 2009, at the age of 43.  Tr. 97.[3]  In October 2011, she filed for Title XVI disability insurance benefits.  Tr. 97.  On November 5, 2012, a video hearing was held before an Administrative Law Judge ("the ALJ").  Tr. 34.  On November 8, 2012, the ALJ issued a decision in which he found that Plaintiff had not been disabled within the meaning of the Social Security Act since  the date her application was filed.  Tr. 15.  He further found that she had not engaged in substantial gainful activity since her application date.  Tr. 15.  The ALJ found that she had three severe impairments: (1) degenerative joint disease of the left knee, (2) depression, and (3) anxiety.  Tr. 15.  However, he concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."  Tr. 18.  After reviewing the evidence of record, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC")

> to perform light work, as defined in 20 CFR 416.967(b).  The claimant can climb, balance, stoop, crouch, crawl, and kneel occasionally.  Such work involves a Specific Vocational Preparation (SVP) level of 2 or less, and contact with supervisors, co-workers, and the general public should not be frequent or prolonged.

---

[3]   The Court refers to the Transcript of the Administrative Proceedings ("Tr."), located at Docket Nos. 12-1, 12-2, 12-3, 12-4, 12-5, 12-6, 12-7, and 12-8, by the sequential transcript numbers instead of the separate docket numbers.

Tr. 20.  The ALJ further found that Plaintiff had no past relevant work as defined by 20 C.F.R. § 416.965 because, based on the testimony of a Vocational Expert (the "VE"), Plaintiff has performed past jobs with SVP levels of 2 and 3, but did not do so at substantial gainful activity levels to constitute past relevant work.  Tr. 27.  The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant could perform, and that therefore a finding of "not disabled" was appropriate under 20 C.F.R. §§ 416.969 and 416.969(a).  Tr. 27-28.

Plaintiff appealed to the Appeals Council, which denied her request for review of the ALJ's decision.  Tr. 1-8.  Therefore, the ALJ's decision became a final decision of the Commissioner for purposes of judicial review.  20 C.F.R. § 416.1083.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability."  A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The

existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.    42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision of the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues *de novo.  Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*"  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

A.    **Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the statutory requirements to receive Social Security benefits.  *See* 20 C.F.R. § 416.920.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.").  The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).  If not, the ALJ considers at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521).  Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

-5-

**B.      Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

**A.      The function-by-function basis of the RFC finding is adequate.**

Plaintiff first contends that the ALJ's RFC finding is deficient because the ALJ did not make findings as to Plaintiff's ability to lift, sit, stand, push, and pull individually before stating the overall conclusion that Plaintiff has the capacity to perform light work. *Brief* [#15] at 11-15.

> Social Security Ruling 96-8p states that
>
> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).   Rulings by the Social Security Administration are binding on an ALJ. *Nielson v. Sullivan,* 992 F.2d 1118, 1120 (10th Cir. 1993).   Paragraphs (b), (c), and (d) of 20 C.F.R. § 416.945 address "physical abilities," "mental abilities," and "other abilities affected by impairment," respectively.

Here, the ALJ separately considered Plaintiff's physical and mental impairments and limitations.   Tr. 20-26.   The ALJ first considered Plaintiff's physical impairments by evaluating the evidence in the record regarding her knee pain.   Tr. 20-22.   The ALJ discussed her two emergency room visits in the record relating to her knee pain, noting that her "longitudinal medical history is not necessarily consistent with her allegation of disability," and that "treatment notes reflect only periodic complaints of any symptoms."   Tr. 21.   At the first emergency room visit on April 28, 2011, Plaintiff complained of left knee pain after tripping down some stairs, and the examination revealed a full range of motion, normal strength, tenderness and swelling on her left patella, and no gross instability to stress testing.   Tr. 210-212.   The x-ray revealed some degenerative joint disease but no fracture, and Plaintiff was discharged with a knee brace, crutches if needed, and medication for pain.   Tr. 212.   At the second emergency room visit on September 4, 2011, Plaintiff complained of knee pain from walking up stairs more frequently, and the examination revealed a full range of motion in all joints and grossly normal strength, while

the x-ray revealed no acute abnormalities. Tr. 204-207. At a followup visit with her primary health care provider, Plaintiff's MRI results were normal, showing some arthritis in her left knee but no tear, and she was discharged with a knee brace to wear when active. Tr. 306. After considering this evidence in the record, the ALJ concluded that it does not "support the claimant's statements regarding an inability to stand, or walk for more than minimal periods, or lift more than a few pounds." Tr. 22. The ALJ concluded that the Plaintiff had the ability to perform work at the light level of exertion, with only occasional climbing, bending, stooping, crouching, crawling, and kneeling. Tr. 22.

The ALJ then considered Plaintiff's mental impairments, noting that no mental health issues were noted when she was hospitalized in September 2011 for new onset diabetes, Tr. 172, and that although she alleged a disability onset date of May 19, 2009, she did not report any mental health symptoms until approximately eighteen months later at a November 2011 visit to her primary care provider. Tr. 22, 303. The ALJ noted that Plaintiff participated in regular monthly counseling appointments with a counselor, and that her issues were situational in nature, related to familial issues. Tr. 22. Plaintiff's medical records reflect that she began seeing a therapist in January 2012, and continued to do so through October 2012. Tr. 313-327. The records further reflect that Plaintiff was depressed due to a number of situational stressors and was taking anxiety medication and anti-depressant medication prescribed by her primary care provider, but that her condition did not worsen dramatically and she did not require any intervention or hospitalization and did not express any suicidal, homicidal, or harmful intent. Tr. 313-327. The ALJ also noted that Plaintiff indicated on her function report that she has trouble reading and does not drive, but that she regularly watches TV and reads to her grandson. Tr. 135-138. The ALJ

-8-

considered this evidence and other evidence in the record to determine how Plaintiff's mental impairments would limit her ability to work.   The ALJ gave great weight to the findings of the State agency psychological consultant, MaryAnn Wharry ("Dr. Wharry").  Tr. 24.  In November 2011, Dr. Wharry examined Plaintiff and reviewed her health records, concluding that the patient's mental impairments produced mild restrictions on daily living activities and maintaining social functioning, and moderate difficulties in maintaining concentration, with no episodes of decompensation.  Tr. 47.  Dr. Wharry then completed a mental RFC assessment for Plaintiff, specifying limitations regarding aspects of Plaintiff's understanding and memory, concentration, and social interaction.   Tr. 50.   The ALJ considered Dr. Wharry's findings, giving them great weight and adopting them "as representative of the claimant's true mental residual functional capacity." Tr. 24.  The ALJ then noted that those findings equate to work at an SVP level of 2 or less as defined by the Dictionary of Occupational Titles, published by the Department of Labor and enunciated in 20 C.F.R. § 416.968.  Given Plaintiff's complaint of developing anxiety in 2012 after Dr. Wharry had completed the examination, the ALJ concluded that it was reasonable to adopt a limitation restricting Plaintiff to work in which contact with supervisors, co-workers, and the general public is not frequent or prolonged.  Tr. 25.

The ALJ considered Plaintiff's physical and mental limitations separately and in considerable detail based on the evidence in the record.  He found that physically, Plaintiff has the ability to perform work at the light level of exertion, with only occasional climbing, bending, stooping, crouching, crawling, and kneeling.  He found that mentally, Plaintiff has the ability to perform work at an SVP of 2 in which contact with others is not frequent or prolonged.   The Court accordingly concludes that the ALJ conducted a satisfactory

function-by-function analysis as required by SSR 96-8p and  20 C.F.R. § 416.945(b)-(d).

Although Plaintiff argues that the ALJ failed to determine Plaintiff's *specific* capacities for sitting, standing, lifting, pushing, and pulling, a technical omission in the ALJ's reasoning is not sufficient ground to reverse the ALJ's finding, provided that the Court can follow the ALJ's reasoning.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review . . . merely technical omissions in the ALJ's reasoning do not dictate reversal.   In conducting our review, we should, indeed must, exercise common sense. . . [W]e cannot insist on technical perfection.").   In a similar case where a plaintiff alleged that the ALJ failed to adequately perform a function-by-function analysis because "the ALJ was required to separately discuss and make findings regarding [the claimant's] abilities to sit, stand, walk, lift, carry, push, or pull," the court refused to overturn the ALJ's decision.  *Hendron v. Colvin*, 767 F.3d 951, 956- 957 (10th Cir. 2014) ("[T]he ALJ did not overlook Ms. Hendron's problems with sitting; he found that the evidence did not support any limitation on her ability to sit during the Relevant Time Period.").  Where, as here, the ALJ considered all of the limitations expressed by Plaintiff and the Court can follow the ALJ's reasoning, the Court cannot conclude that the ALJ committed reversible error by failing to express the RFC finding on a function-by-function basis.

**B.   The ALJ's decision properly reflects the weight he gave to Dr. Valette's medical opinion.**

Second, Plaintiff contends that the ALJ erred by failing to explain the weight he gave to Brett Valette's ("Dr. Valette") medical opinion.  *Brief* [#15] at 16-19.  Plaintiff contends that Dr. Valette concluded that Plaintiff had concentration and focusing problems, but that

the ALJ's RFC finding did not address deficits in concentration or focus, and thus that the ALJ did not comply with the standard for weighing Dr. Valette's opinion. *Brief* [#15] at 16-17.   In response, the Commissioner maintains that the ALJ properly articulated his treatment of Dr. Valette's opinion because "the ALJ stressed that Dr. Valette's evaluation provided 'less than compelling' evidence that Plaintiff's mental impairments were disabling." *Response* [#18] at 11.

20 C.F.R. § 416.927(c) states that the Social Security Administration "will evaluate every medical opinion [it] recieve[s]" and will consider the following six factors in deciding the weight to give to any medical opinion: the '[e]xamining relationship . . . , [t]reatment relationship . . . , [s]upportability . . . , [c]onsistency . . . , [s]pecialization . . . , [and o]ther factors."   Further, the ALJ must articulate what weight, if any, he gives to opinions of treating physicians and provide supported reasons for discounting or rejecting their opinions. *See Lopez v. Astrue*, 371 F. App'x 887, 891 (10th Cir. 2010) (reversing and remanding an ALJ's decision to deny benefits because the ALJ "failed to articulate what weight, if any" she gave to the opinions of two treating physicians and because her asserted reasons for discounting or rejecting their opinions were not supported by substantial evidence); *see also Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir. 2003) (remanding to the Commissioner because the ALJ failed to articulate the weight he gave to the treating physician's opinion: "We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight he assigned to the treating physician's opinion.").   Further, a policy interpretation ruling issued by the Social Security Administration regarding the weight given to medical opinions states that when the determination or decision of the adjudicator is a denial, "the notice of the determination or

decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent viewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."   SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. 1996).

Here, the Court can sufficiently discern the weight given by the ALJ to Dr. Valette's opinion because the ALJ discussed Dr. Valette's findings in some detail and found that they did not support a claim that Plaintiff is unable to work due to her mental impairments. Tr. 23; *see also* Tr. 271-273.   Further, the ALJ noted that Dr. Wharry reviewed Dr. Valette's findings, and that Dr. Wharry "based her conclusions on the findings of Dr. Valette and the overall record."   Tr. 23; *see also* Tr. 46.   The ALJ found Dr. Wharry's opinion to be well supported and consistent with the record as a whole, and thus gave great weight to Dr. Wharry's assessment as indicative of Plaintiff's true mental RFC.   Tr. 24.   Dr. Wharry's assessment of Plaintiff's RFC incorporated and did not discount Dr. Valette's findings regarding Plaintiff's concentration and focusing problems. Tr. 50. Dr. Wharry reported that Plaintiff had "sustained concentration and persistence limitations," and that Plaintiff's "ability to maintain attention and concentration for extended periods" was "moderately limited."   Tr. 50.   Thus, because Dr. Wharry's findings clearly incorporated and did not discount Dr. Valette's findings with regard to concentration and focusing problems, and because the ALJ noted this and articulated the great weight he gave to Dr. Wharry's assessment, the Court can conclude that the ALJ gave weight to Dr. Valette's opinion and did not discount or reject Dr. Valette's findings regarding  Plaintiff's abilities to concentrate and focus.  The ALJ's decision was sufficiently specific in its discussion of Dr. Valette's opinion to make

clear to the Court the weight the ALJ gave to the opinion and the reasons for that weight. *Taylor v. Astrue,* 266 F. App'x 771, 777 (10th Cir. 2008).

Further, assuming the ALJ failed to appropriately articulate the precise weight he gave to Dr. Valette's opinion, the ALJ's failure to do so in this case is harmless error.  The Court may apply the concept of harmless error in the social security context where, "based on the material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Armijo v. Astrue,* 385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004)).  Here, based on the ALJ's consideration and discussion of Dr. Valette's opinion, no reasonable fact-finder could have resolved the factual matter of Plaintiff's mental RFC limitation in any other way.  The ALJ gave great weight to Dr. Wharry's assessment, which directly incorporated the findings of Dr. Valette regarding Plaintiff's concentration and focus  limitations.  Tr. 24, 50.  The ALJ noted that Dr. Wharry's findings equated to work at an SVP level of 2 or less, which is simple, unskilled work that can be learned in one month or less.  Tr. 23-24.  Thus, the Court concludes that based on the findings the ALJ considered from Dr. Valette's report and the great weight the ALJ gave to Dr. Wharry's report directly incorporating those findings, no reasonable factfinder would resolve the issue in another way.  In other words, the Court can sufficiently review the ALJ's decision regarding Dr. Valette's opinion, and requiring the ALJ to precisely articulate the weight he gave to Dr. Valette's opinion would not dictate a different outcome.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner.  *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005);

*White v. Barnhart*, 287 F.3d 903, 905, 908, 909 (10th Cir. 2001).  The conclusions reached

by the ALJ must be reasonable and consistent with the evidence.  *See Glenn v. Shalala*,

21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if, considering the

evidence as a whole, there is sufficient evidence which a reasonable mind might accept as

adequate to support a conclusion).  An ALJ must evaluate every medical opinion in the

record, although the weight given each opinion will vary according to the relationship

between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d

1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)).  The ALJ has met these

standards.  Accordingly, the Court finds that the ALJ did not err in his treatment of Dr.

Valette's opinion.

**C.    The ALJ did not err in evaluating Plaintiff's mental limitations related to anxiety.**

Plaintiff next contends that the ALJ failed to properly evaluate Plaintiff's mental

limitations related to anxiety because the ALJ gave great weight to Dr. Wharry's opinion,

which did not account for Plaintiff's subsequent diagnosis of anxiety.  *Brief* [#15] at 28.

Plaintiff maintains that although the ALJ adopted an RFC limitation that Plaintiff's work

should only involve contact with supervisors, coworkers, and the public that is not frequent

or prolonged, the ALJ did not sufficiently consider, and did not have sufficient evidence in

the record to consider, the specific limitations that Plaintiff's anxiety would impose on her

ability to work.  *Id.* at 28-33.  The Commissioner responds by asserting that the ALJ did

reasonably consider Plaintiff's anxiety allegations and included an appropriate limitation in

the RFC finding.  *Response* [#18] at 18.

When an ALJ determines a claimant's RFC, "the RFC assessment must include a

narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7.  In determining an individual's RFC, the ALJ must consider all relevant evidence in the case record, including "medical history. . . , the effects of treatment . . . , reports of daily activities . . . , lay evidence . . . , recorded observations . . . , medical source statements . . . , effects of symptoms . . ." and other applicable factors.  *Id.* at *5.

It is clear from the decision that the ALJ considered relevant evidence regarding Plaintiff's complaints of anxiety and that he included a limitation in his RFC analysis that reflected his consideration of that evidence.   The ALJ considered the major factors supported by the evidence in the record regarding Plaintiff's anxiety: treatment records from her primary care provider and Plaintiff's own statements about her difficulty being around others.  Tr. 25.  The ALJ stated that "claimant also has a diagnosis of anxiety," indicating that the ALJ did not altogether disregard Plaintiff's complaints of anxiety.  Further, the ALJ's decision indicates that he examined the treatment records from Plaintiff's primary care provider, noting that treatment records reflect that her anxiety is controlled with prescribed anti-anxiety medication.  Tr. 25, 300.  The ALJ also accounted for Plaintiff's statements that she has difficulty being around others.  Tr. 25.  The ALJ incorporated these considerations into his RFC finding, adopting a limitation restricting her to work in which contact with supervisors, co-workers, and the general public is not frequent or prolonged.  Tr. 25, 27.

Plaintiff contends that the ALJ should have further developed the record to obtain a medical opinion regarding the nature and severity of the anxiety, because the ALJ has a duty to fully and fairly develop the record as to material issues.  *Brief* [#18] at 32 (citing *Hawkins v. Charter*, 113 F.3d 1162, 1168 (10th Cir. 1997)).   The Court notes that the

record before the ALJ contained opinions and evidence regarding Plaintiff's mental health, and the ALJ explained his reasons for relying on some of that evidence and discounting other pieces of evidence. The ALJ did not rely on the form filled out by Jesse Steffel, P.A., because Mr. Steffel is a physician's assistant and not an acceptable medical source as defined by 20 C.F.R. § 416.913(a), and because the form consists of conclusory, "check the box" answers, and contains no explanation of the evidence relied on in reaching the conclusions. Tr. 25, 307-309. The ALJ did not rely on the mental RFC capacity evaluation completed by Cynthia Jimenez because she is a clinical social worker and not an acceptable medical source as defined by 20 C.F.R. §416.913(a), and because that form also consists of conclusory, "check the box" answers, and provides no explanation of the evidence relied on in reaching the opinions. Tr. 26, 310-312.

"It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins*, 113 F.3d at 1164. However, a social security proceeding is non-adversarial, and thus the ALJ is responsible in every case to "ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* (citation omitted). "Further, when a claimant is represented by counsel . . . the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.* at 1167 (citing *Glass,* 43 F.3d at 1394-1396). Here, Plaintiff had counsel present at the hearing before the ALJ. At the start of the hearing, the ALJ asked the attorney, "Do we have the records we need?" and the attorney replied, "Yes, judge." Tr. 35. During the hearing, Plaintiff's counsel only asked one question of the VE, regarding

whether any suitable jobs would be available if a person was markedly impaired in their ability to interact appropriately with supervisors, to which the VE replied that that limitation would eliminate all work.  Tr. 40.  At the end of the hearing, the ALJ again asked Plaintiff's counsel, "Anything else before I take this matter under consideration?" to which the attorney replied, "No."  Tr. 41.

Thus, in this case, Plaintiff's counsel had an opportunity to ask questions of both the VE and the ALJ in order to ensure that the record was adequately developed with regard to Plaintiff's complaints of anxiety.  Further, the ALJ considered the relevant evidence in the record regarding Plaintiff's anxiety, her treatment records and her own statements, and adopted an RFC limitation that reflects those considerations.  Tr. 25, 27.  Plaintiff argues, essentially, that the ALJ's assessment was not adequate, and that he should have adopted a more severe RFC limitation to account for Plaintiff's anxiety.  *Brief* [#15] at 30-31.  However, Plaintiff does not specify what this limitation should have been, or what additional questions would need to be resolved by further medical expert opinions.  *See id.* at 30-33.

Again, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner.  *Hackett*, 395 F.3d at 1173; *White*, 287 F.3d at 905, 908, 909.  To reverse the decision of the ALJ simply because the ALJ's consideration of Plaintiff's evidence related to anxiety could have been more in-depth would essentially constitute de novo review of the ALJ's decision, which the Court is not authorized to do.  *See Sisco*, 10 F. 3d at 741.  Thus, the Court cannot conclude that the ALJ erred in his evaluation of Plaintiff's mental limitations related to anxiety.

**D.     Failure to include in the record the 2009 decision regarding Plaintiff's claim for benefits was error.**

Plaintiff contends that the ALJ erred because the physical RFC limitations were not based on evidence in the record. *Brief* [#15] at 19. Plaintiff argues that the ALJ stated that he found no worsening of Plaintiff's physical condition since a prior ALJ decision was issued dated May 20, 2009, that he therefore adopted the physical limitations in the previous ALJ's decision, and that he thus improperly relied on evidence not contained in the administrative record. *Id.* at 19-20. Plaintiff asserts that her attorney was not provided with an opportunity to review or refute the evidence that the ALJ relied on, and while the ALJ explained the basis for his physical RFC limitations, the evidence was not in the record and thus the physical RFC limitations are not supported by substantial evidence in the record. *Id.* at 21. The Commissioner responds that the ALJ based his reasoning for the Plaintiff's physical RFC limitations on evidence which post-dates the May 2009 prior decision, that the ALJ considered the evidence from the prior decision only for "historical perspective," and that the ALJ's findings are supported by substantial evidence. *Response* [#18] at 23.

First, the Court notes that the 2009 decision to which the ALJ refers does not appear in the record, and there is no evidence in the record summarizing the findings from that decision.[4] The only mention of a prior 2009 decision is in the Initial Disability Determination Explanation, where a list of "Prior Electronic Filings" includes a decision date of May 18,

_____

[4] The ALJ noted that the 2009 decision denying supplemental security income was denied to the Appeals Council. Tr. 14. The Appeals Counsel declined the request to review the decision. Tr. 14. Because Plaintiff did not seek further judicial review, Tr. 14, the 2009 decision became a final decision of the Commissioner. 20 C.F.R. § 416.1083. Thus, the previous ALJ's reasoning and the evidence underlying the 2009 decision are not at issue here. Rather, the issue here concerns the previous ALJ's conclusions and whether Plaintiff's impairments have sufficiently deteriorated since that time to now allow her to meet the statutory requirements for an award of benefits.

2009,[5] without any information regarding the content of the decision.  Tr. 44.  The Social Security Regulation regarding RFC determination states that the Social Security Administration will "assess your residual functional capacity based on all the relevant evidence in [the] case record."  20 C.F.R § 416.945 (a)(1).  The ALJ states in his decision that he considered the evidence contained in prior applications and the 2009 decision to provide historical perspective regarding Plaintiff's medical conditions and credibility.  Tr. 14.  However, when concluding his discussion of Plaintiff's physical RFC limitations, the ALJ concluded that the record did not support Plaintiff's claims of extreme limitations in her exertional capacities and stamina and stated:

> As such, consistent with the findings contained in the May 20, 2009 decision from the previous administrative law judge, the undersigned finds that, there has been no worsening of her condition since that time, with no evidence of any lumbar degenerative joint disease.  As such, the undersigned adopts the findings from the prior decision, concluding that, the claimant retains the ability to perform work at the light level of exertion, with only occasional climbing, bending, stooping, crouching, crawling, and kneeling.

Tr. 22.  The ALJ later reiterated his reliance on the 2009 decision, stating that:

> as previously noted, when assessing physical limitations to the claimant due to her physical impairment, the undersigned relied upon findings from the previous decision, dated May 20, 2009.  That administrative law judge determined that, the claimant retained the ability to perform work at a light level of exertion, with occasional bending, stooping, crouching, crawling, and kneeling.  The undersigned notes that, there has been no worsening of her condition since that time, with no evidence of any lumbar degenerative joint disease.

Tr. 24.  The ALJ's brief summary of the 2009 decision is the only substantive information in the record about the decision. The ALJ did not provide a case citation to the 2009

---

[5] There is no explanation for the two-day discrepancy in dates.  *Compare* Tr. 15 (May 20, 2009) *with* Tr. 44 (May 18, 2009).

decision or any other way for the Court to find the 2009 decision, or to understand the previous ALJ's reasoning.  While the Commissioner is correct that the ALJ based his reasoning for Plaintiff's physical RFC on evidence in the record developed after the 2009 decision, the ALJ's ultimate conclusion regarding Plaintiff's physical RFC relies on the 2009 decision.  Tr. 21-22.  (The ALJ states that since the evidence in the record supports no worsening of Plaintiff's condition since that decision, he adopted the physical RFC findings from the prior decision.  Tr. 22.)  Thus, if the ALJ's reliance on the 2009 decision is omitted, his discussion of the evidence in the record regarding Plaintiff's physical RFC and his conclusion that the record provides no convincing evidence to support her claimed limitations remains, but his decision contains no affirmative statement as to what Plaintiff's physical RFC *actually is.*  Further, the ALJ reiterated that he relied on the findings from the 2009 decision when assessing Plaintiff's physical limitations.  Tr. 24.

As stated above, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ and the Commissioner.  *Hackett*, 395 F.3d at 1173; *White*, 287 F.3d at 905, 908, 909.  However, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  *See Glenn*, 21 F.3d at 988. Here, a significant piece of evidence on which the ALJ relied is neither in the record nor readily accessible by the Court in order to review the ALJ's reasoning.  The role of the Court when reviewing the decision of an ALJ is to examine the administrative record and determine "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson,* 602 F.3d at 1140.  Where a significant part of the ALJ's reasoning and findings is supported by evidence or information that the Court is unable to review, the Court cannot fulfil its duty to determine whether the evidence supports

the ALJ's findings and whether the correct legal standards were applied.  As succinctly stated in *Hill v. Astrue*, 526 F. Supp. 2d 1223, 1228-29 (D. Kan. 2007) (collecting cases):

> In a social security disability case, the court has the duty to meticulously examine the record and determine on the record as a whole whether the Commissioner's factual findings are supported by substantial evidence and whether the Commissioner applied correct legal standards. *Pace v. Shalala*, 893 F. Supp. 19, 20 (D. Kan.1995).  The entire administrative record is a necessary part of appellant's record on appeal.  This area of law is fact-specific and our standard of review is deferential to the Commissioner; therefore, the complete administrative record is required whether appellant argues that the findings are not supported by substantial evidence or that incorrect legal standards were applied. *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995).  A court has the authority to remand a case for further consideration if unable to exercise meaningful or informed judicial review because of an inadequate administrative record. *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 594 (1980).  The administrative record must permit meaningful judicial review.  Therefore, if the missing documents are immaterial to the ALJ's decision, or not relied on in his opinion, a remand would not be warranted. *Brady v. Apfel*, 41 F. Supp. 2d 659, 668 (E. D. Tex. 1999).  However, when the ALJ's findings were derived from the information that the Commissioner failed to include in the record, the court cannot conduct the meticulous examination of the record required by law. *See Pace*, 893 F. Supp. at 21.

Here, the Court cannot conclude that the missing documents were immaterial to the ALJ's decision because his decision reflects that he expressly relied on them.  The ALJ's failure to express Plaintiff's physical RFC limitation without relying on the 2009 decision could have affected the outcome of Plaintiff's disability determination for two reasons.  First, as Plaintiff notes, Plaintiff's attorney was not aware of the reasoning or information contained in the prior 2009 decision, and therefore could not review or refute that information.  Second, in the transcript of the hearing, the ALJ's hypothetical question to the VE directly incorporated the findings regarding Plaintiff's physical RFC that the ALJ adopted from the 2009 order:

> If I had an individual . . . limited to a range of light work; only occasionally

> climb, bend, stoop, crouch, crawl, or kneel; and, if we have, instead of SVP 3, we have SVP 2; and further, if we add that contact with supervisors, co-workers, and the general public could not be frequent or prolonged, would I expect that that individual could find work that exists in significant numbers?

Tr. 38. Because the ALJ adopted the physical RFC findings from the 2009 order (that the Plaintiff retained the ability to perform work at the light level of exertion with occasional bending, kneeling, stooping, crouching, crawling and kneeling), and then based his question to the VE on those findings, the VE's testimony regarding whether jobs exist in substantial numbers which the plaintiff can perform incorporated these findings.  The Court cannot imagine a hypothetical question that would not rely on the 2009 decision, because the ALJ expressed his physical RFC finding only by adopting the findings from the 2009 decision.  Therefore, the error here in the ALJ's reasoning is not harmless.  The Court concludes that the ALJ erred in failing to include the 2009 decision in the administrative record after expressing his findings regarding Plaintiff's RFC based on that decision.

In sum, the 2009 decision should have been made available to Plaintiff and her counsel before the hearing and subsequently have been included in the record for this Court's review.  "Substantial review must reach these materials because they clearly underlie any rational basis for the decision." *Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1255 (D. Colo. 2010).  Without access to this decision, Plaintiff's counsel could not meaningfully develop the record and this Court is unable to meaningfully review the ALJ's decision.  Accordingly, this case should therefore be remanded.[6]  *Harrison*, 446

---

[6]  Plaintiff also asserts that, at step five, the ALJ's failure to include Plaintiff's difficulty in maintaining concentration, persistence, or pace in the hypothetical to the VE "tainted the validity of the vocational expert's testimony of jobs at stage five."  *Brief* [#15] at 27.  The Court will not address this argument because it may be impacted by the ALJ's analysis on remand. *See Watkins*, 350 F.3d at 1299 ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *see also Daniell v. Astrue*, 384 F.

U.S. at 594.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Dated:  May 28, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

App'x 798, 804 (10th Cir. 2010).